J-A17027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ESTATE OF IRVING ALTMAN, : IN THE SUPERIOR COURT
DECEASED : OF PENNSYLVANIA
_____ :
IN RE: IRVING ALTMAN AND LEHLA :
ALTMAN   IRREVOCABLE TRUST UNDER :
AGREEMENT DATED APRIL 23, 1999 :
:
:
:
APPEAL OF: HARRY ALTMAN :
: No. 2519 EDA 2021

Appeal from the Order Entered November 9, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2012-X1370


IN RE: ESTATE OF IRVING ALTMAN, : IN THE SUPERIOR COURT
DECEASED : OF PENNSYLVANIA
_____ :
IN RE: IRVING ALTMAN AND LEHLA :
ALTMAN   IRREVOCABLE TRUST UNDER :
AGREEMENT DATED APRIL 23, 1999 :
:
:
:
APPEAL OF: HARRY ALTMAN :
: No. 2520 EDA 2021

Appeal from the Order Entered November 9, 2021
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2016-X3993


BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED OCTOBER 24, 2022**

Harry Altman (Appellant), and Karen Steinfeld and Debra Brockman

(Appellees), are the surviving children of Irving Altman (the decedent).

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant appeals from the November 9, 2021 order granting partial summary judgment[1] in favor of Appellees, co-executors and beneficiaries of the decedent's estate (the Estate) and beneficiaries of the Irving Altman and Lehla Altman Irrevocable Trust U/A dated April 23, 1999 (the Trust).[2] After review, we affirm in part, reverse in part, and remand for further proceedings consistent with this Memorandum.[3]

_____

[1] The November 9, 2021 order is appealable as of right pursuant to Pa.R.A.P. 342(a)(3), (5), and (6).

[2] We point out that orphans' court docket 2012-X1370 involves the Estate, and docket 2016-X3993 involves the Trust. The record reveals that the orphans' court consolidated these matters on January 18, 2018, and it filed a single dispositional order. Order, 11/9/21. Appellant filed timely separate appeals at each orphans' court docket on November 23, 2021. On February 24, 2022, this Court consolidated the appeals *sua sponte*.

[3] The record reflects that an additional participant in this matter, co-trustee, Larry Horowitz, CPA (Horowitz), also filed a motion for summary judgment against Appellant and filed an appellate brief in this matter. On November 15, 2021, the orphans' court denied Horowitz's motion as moot because the issues raised in the motion were dismissed with prejudice by the November 9, 2021 order at issue in this appeal. In light of our disposition, we acknowledge that the issues raised in Horowitz's motion may no longer be moot. However, we decline Horowitz's invitation to rule on his motion in the first instance. **See** Horowitz's Brief at 6 n.2. The status and resolution of the merits of Horowitz's motion for summary judgment are best left to the orphans' court. **See Aetna Inc. v. Lexington Ins. Co.**, 968 A.2d 229, 230 (Pa. 2009) (*per curiam*) (stating that "an action is 'moot' suggests that there is a legal issue involved in a case, but because of the circumstances surrounding the case, the issue has become an academic one and will not be resolved. What 'mootness' does not suggest is that an issue was fully considered and a final judgment entered." (citing **Consolidation Coal Co. v. District 5, United Mine Workers of America**, 485 A.2d 1118, 1124 (Pa. Super. 1984)) (formatting altered); **see also Friday v. Friday**, 457 A.2d 91, 93 (Pa. Super. 1983) (directing the lower court to address on remand the merits of a separate petition that was no longer moot in light of this Court's ruling).

- 2 -

The orphans' court summarized the relevant facts and procedural history in this matter as follows:

Before the court is [Appellees'] motion for partial summary judgment in which they ask the court to overrule and dismiss certain objections made by [Appellant] to [Appellees'] first and second final accountings of the Estate . . . and [the Trust], filed by Larry Horowitz, CPA, co-trustee. . . .

The decedent, a resident of Springfield Township, Pennsylvania, died on March 29, 2012. On April 23, 1999, [the] decedent and his wife Lehla Altman created the Trust. The Trust named [Appellant] and Larry Horowitz as co-trustees. Pursuant to court order, Larry filed the First and Final Accounting to the Trust on March 28, 2017. [Appellant] filed a [limited] joinder to said account on April 27, 2017. Thereafter, [Appellant] filed objections to said account on April 28, 2017. [Appellant's] objections generally assert that he has a right to reimbursement for premium payments he made as trustee for [the] decedent's life insurance policy which funded the Trust.

[The d]ecedent had executed a will on March 15, 2011. The will appointed the decedent's children, [Appellant and Appellees Karen and Debra], to serve jointly as co-executors and gave them the authority to act by majority vote. Each of the siblings has a one-third interest in the residue of the [E]state. On April 12, 2012, the Register of Wills issued letters testamentary to the three siblings. The decedent left an estate composed of substantial assets including corporate holdings, stocks, depository accounts, and real estate.

Initially, the three co-executors tried to administer the Estate together with the assistance of [the] decedent's long-time lawyer, Michael Rogers, Esquire, but, due to a "pervasive level [of] disagreement" between the co-executors, and "substantial potential or actual conflicts of interest which cannot be reconciled," his firm withdrew from the representation of the co-executors. [Appellees] retained Fox Rothschild LLP in November 2012. [Appellant] also retained separate counsel.

[Appellees] Karen and Debra, proceeded to carry out the duties of co-executors by acting as a majority and filed a first and final account and petition for adjudication on May 31, 2017. On July 10, 2017, the account was called to audit and [Appellant] filed

objections. The three co-executors worked to reach a settlement for two years but they were unable to reach an agreement. [Appellees] filed an updated, second and final accounting and petition for adjudication on July 29, 2019. The second account was called to audit on September 3, 2019, at which time [Appellant] filed additional objections.

By way of further procedural background, [Appellees] filed a motion in limine to preclude statements from [Appellant] under the Dead Man's Act. On October 13, 2021, the court granted said motion. On August 2, 2021, [Appellees] filed the instant motion for partial summary judgment with an accompanying memorandum of law. [Appellant's] answer and memorandum of law were filed on August 31, 2021. . . .

Orphans' Ct. Mem. and Order, 11/9/21, at 1-3 (formatting altered).

On November 9, 2021, the orphans' court granted partial summary judgment in favor of Appellees. Appellant timely appealed, and both the orphans' court and Appellant complied with Pa.R.A.P. 1925.[4]

On appeal, Appellant presents the following issues:

1. Did the orphans' court err as a matter of law when it granted Appellees' motion for partial summary judgment and dismissed with prejudice Appellant's objections, despite: (a) the existence of numerous genuine issues of fact; and (b) the failure to resolve all doubts in favor of Appellant?

2. Did the orphans' court err as a matter of law when it relied upon its declaration that Appellant is an incompetent witness under the Dead Man's Act, despite that a genuine issue of material fact exists regarding whether Appellees waived any application of the Dead Man's Act?

3. Did the orphans' court err as a matter of law when it prematurely determined the validity and scope of the April 2, 2011 settlement agreement without: (a) any evidentiary record; and (b) any determination of the admissibility and

_____

[4] The orphans' court filed its Rule 1925(a) opinion on February 15, 2022, which incorporated and attached its November 9, 2021 memorandum and order.

- 4 -

credibility of such evidence and; (c) considering parol evidence?

4. Did the orphans' court err as a matter of law when it dismissed with prejudice Appellant's objections regarding his ownership of entities 2131 Associates LP/2131 Management Company, LLC and TSAG Associates, Inc., ostensibly on the basis of its improper review of possible trial exhibits, without any determination of admissibility and credibility of any evidence, and not in the light most favorable to Appellant?

5. Did the orphans' court err as a matter of law when it dismissed with prejudice Appellant's objections regarding reimbursement to AMA Contracting, Inc. by the Estate without an evidentiary record and without determination of the admissibility and credibility of any evidence related thereto, and not in a light most favorable to Appellant?

6. Did the orphans' court err as a matter of law when it dismissed with prejudice Appellant's objections to the Trust Account, ostensibly because he "joined" the Account, in part, despite that [Appellant] explicitly excluded "the failure to include [Appellant's] claim for reimbursement for premiums paid on behalf of the Trust and his legal fees related to his administration of the Trust and the litigation of this matter" and explicitly reserving "the right to object to the failure to reimburse him for the premiums paid and the legal fees and costs incurred related to this matter."

Appellant's Brief at 5-6 (formatting altered).[5,6]

_____

[5] Our review in this matter is complicated by the fact that Appellant's brief does not comply with Pa.R.A.P. 2119(a). Specifically, the argument section does not correspond with the issues presented in the statement of questions involved. As a result, it is difficult to distinguish which portions of the argument section apply to the issues Appellant raises on appeal. However, because we find that Appellant's violations do not completely preclude appellate review, we proceed with our discussion.

[6] We are also constrained to point out that in his conglomeration of issues, Appellant purports to argue that the orphans' court erred in its findings regarding the effect of the integration clause and asserts that the Agreement

*(Footnote Continued Next Page)*

## **Summary Judgment**

As we noted above, Appellant's brief violates Pa.R.A.P. 2119(a) because the argument section does not correspond to the statement of questions involved. The first issue in Appellant's statement of questions asserts that the orphans' court failed to apply the proper standard of review, failed to resolve all doubts in Appellant's favor, and dismissed Appellant's objections to the first and second final accountings of the Estate and first and final accounting of the Trust despite the existence of genuine issues of fact. Appellant's Brief at 5. However, this general claim is not separately addressed in the argument portion of Appellant's brief. *See id.* at 5, 33-44. Rather, Appellant's broad assertion that the orphans' court erred in granting partial summary judgment introduces more specific issues discussed in the argument section. *See id.* at 33-44. Although we will dispose of Appellant's overarching claim that the orphans' court erred in granting partial summary judgment, for clarity, we will do so in light of the specific issues addressed below.[7]

---

was ambiguous. *See* Appellant's Brief at 34-50. However, Appellant did not present these issues in his Rule 1925(b) statement. Because these claims concerning the integration clause and ambiguity were not specified in Appellant's Rule 1925(b) statement, they are waived on appeal. *See HSBC Bank, NA v. Donaghy*, 101 A.3d 129, 133 n.7 (Pa. Super. 2014) (explaining that issues not properly raised in a Rule 1925(b) statement are waived on appeal).

[7] We also note that issues not included in Appellant's statement of questions involved are waived. *See Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 320 n.9 (Pa. Super. 2015); *see also* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby").

**<u>Dead Man's Act</u>**

Appellant contends that the orphans' court erred when it applied the Dead Man's Act and precluded Appellant from testifying. Appellant's Brief at 39. After review, we conclude that Appellant is entitled to no relief on this claim of error.

In determining whether the orphans' court erred in granting summary judgment, our standard of review is *de novo* and our scope of review is plenary. **In re Estate of Caruso**, 176 A.3d 346, 349 (Pa. Super. 2017).

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof of an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**Oberdick v. TrizecHahn Gateway, LLC**, 160 A.3d 215, 219 (Pa. Super. 2017) (some citations omitted). Although "the non-moving party must be given the benefit of all reasonable inferences," the non-moving party "need not be given the benefit of inferences not supported by the record or of mere speculation." **Myers v. Penn Traffic Co.**, 606 A.2d 926, 930 (Pa. Super. 1992) (*en banc*).

Additionally:

> Questions concerning the admissibility of evidence lie within the
> sound discretion of the trial court, and we will not reverse the
> court's decision absent a clear abuse of discretion.  An abuse of
> discretion may not be found merely because an appellate court
> might have reached a different conclusion, but requires a manifest
> unreasonableness, or partiality, prejudice, bias, or ill-will, or such
> lack of support as to be clearly erroneous.  In addition, to
> constitute reversible error, an evidentiary ruling must not only be
> erroneous, but also harmful or prejudicial to the complaining
> party.

*Crespo v. Hughes*, 167 A.3d 168, 177 (Pa. Super. 2017) (citations omitted

and formatting altered).

The Dead Man's Act is an evidentiary rule, which provides in relevant

part, as follows:

> **Surviving party as witness, in case of death**[.]
>
> [I]n any civil action or proceeding, where any party to a thing or
> contract in action is dead . . . and his right thereto or therein has
> passed . . . to a party on the record who represents his interest in
> the subject in controversy, neither any surviving or remaining
> party to such thing or contract, nor any other person whose
> interest shall be adverse to the said right of such deceased . . .
> party, shall be a competent witness to any matter occurring before
> the death of said party . . . unless the issue or inquiry be *devisavit
> vel non*,[8] or be any other issue or inquiry respecting the property

---

[8] *Devisavit vel non* is defined as "[t]he name of an issue sent out of a court of
chancery, or one which exercises chancery jurisdiction, to a court of law, to
try the validity of a paper asserted and denied to be a will, to ascertain
whether or not the testator did devise, or whether or not that paper was his
will."  BLACK'S LAW DICTIONARY 452 (6th ed. 1991).  The *devisavit vel non*
exception to the Dead Man's Act provides that "witnesses are competent to
testify in disputes arising over the passage of property, through will or
intestacy, although their testimony might otherwise be rendered incompetent
*(Footnote Continued Next Page)*

- 8 -

of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses.

42 Pa.C.S. § 5930. This Court has explained:

The Dead Man's Act is an exception to the general rule of evidence in this Commonwealth that: no interest or policy of law shall make any person incompetent as a witness. The Act provides that one whose interest is adverse to the interest of a decedent is not a competent witness to any matter which occurred before the decedent's death.

*Frazer v. McEntire*, 265 A.3d 777, 781 (Pa. Super. 2021) (citations omitted and formatting altered), *appeal denied*, 278 A.3d 309 (Pa. 2022). Furthermore:

The purpose of the statute is to prevent the injustice that may result from permitting a surviving witness to a transaction to give testimony favorable to himself and adverse to the decedent, which the decedent's representative would be in no position to refute by reason of the decedent's death.

Under the Dead Man's Act three conditions must exist before the surviving party or witness is disqualified: (1) the deceased must have had an actual right or interest in the matter at issue, *i.e.* an interest in the immediate result of the suit; (2) the interest of the witness—not simply the testimony—must be adverse; [and] (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.

*Id.* (citation omitted and formatting altered). When determining whether the proposed witness's interest is adverse to the interest of the decedent's estate,

---

through operation of the general rule." *In re Estate of Janosky*, 827 A.2d 512, 516 n.3 (Pa. Super. 2003) (citation omitted).

- 9 -

this Court has explained that "the interest must be one from which the witness will either gain or lose as the direct legal operation and effect of the judgment." *Id.* (citation omitted and formatting altered).

> The *devisavit vel non* exception provides that witnesses are competent to testify in disputes arising over the passage of property, through will or intestacy, although their testimony might otherwise be rendered incompetent through operation of the general rule. This exception applies to disputes involving the transfer of a decedent's estate both by operation of law or by will and renders competent all witnesses claiming decedent's property by reason of his death.

*Id.* (citation omitted and formatting altered).

Here, the orphans' court addressed the applicability of the Dead Man's Act as follows:

> The [decedent] clearly had an interest in his Estate. The interests of Appellant are adverse to that of the decedent because the objections filed by Appellant make claims against the decedent's ownership interests in business entities as well as claims for monies allegedly owed to Appellant by the decedent. Appellant seeks to reduce the decedent's ownership interests in [the] business entities and the overall value of the Estate. Lastly, the rights of the decedent passed to [Appellees] who filed the motion for partial summary judgment as co-executors of the Estate. While it is true that Appellant is also a co-executor, the . . . Dead Man's Act is applicable as long as "a right of the deceased must have passed to a party of record who represents the deceased's interests." [**In re Estate of Cerullo**, 247 A.3d 52, 55 (Pa. Super. 2021)]. [Appellees] are parties of record to the Estate and represent the deceased's interests. Thus, this court properly found that Appellant is prohibited from testifying as to any matters occurring prior to the death of the decedent except as may otherwise be permitted by law.

Orphans' Ct. Op., 2/15/22, at 8.

- 10 -

Following our review of the record, we discern no error of law or abuse of discretion in the orphans' court's application of the Dead Man's Act. *See Frazer*, 265 A.3d at 781; *Crespo*, 167 A.3d at 177. As stated previously, the purpose of the Dead Man's Act is to prevent the injustice that may result from permitting a surviving witness to a transaction to give testimony favorable to himself and adverse to the decedent that the decedent's representative could not refute due to the decedent's death. *Frazer*, 265 A.3d at 781. Here, Appellant challenged and sought to reduce the decedent's ownership interests in business entities and claimed that the decedent owed him money. *See* Orphans' Ct. Op., 2/15/22, at 8. Therefore, because Appellant's interests are adverse to those of decedent, we agree with the orphans' court's conclusion that the Dead Man's Act precluded Appellant's testimony.[9] Accordingly, Appellant is not entitled to relief on this claim.

**2011 Settlement Agreement**

Appellant next contends that the orphans' court erred in determining the application and scope of the April 2, 2011 settlement agreement (the

---

[9] We note that we are constrained to disagree with the orphans' court's alternative holding that Appellant waived this issue for failing to file an appeal within thirty days from the entry of the October 13, 2021 order granting Appellees' motion *in limine* and precluding Appellant from testifying. *See* Orphans' Ct. Op., 2/15/22, at 6-7. We conclude that the October 13, 2021 order did not satisfy the criteria for a final order under Pa.R.A.P. 341 requiring immediate appeal, nor did the failure to appeal result in waiver under Pa.R.A.P. 342(c), because the October 13, 2021 order precluding Appellant from testifying did not satisfy the requirements set forth in Pa.R.A.P. 342(a)(1)-(7) concerning appealable orphans' court orders.

- 11 -

Agreement) without an evidentiary record or a determination on the admissibility and credibility of evidence, including parol evidence. Appellant's Brief at 33-35. Appellant asserts that the Agreement was procured by fraud and that Appellant was owed a $1.5 million priority distribution. *Id.* at 35-36.

Appellees respond that the basis for Appellant's argument consists of only his own self-serving statements. Appellees' Brief at 36. Further, Appellees assert that Appellant's "evidence" is not only inherently self-serving and lacking in credibility, but it is also indisputably barred from consideration pursuant to application of the parol evidence rule and the Dead Man's Act. *Id.*

The orphans' court addressed this issue as follows:

[Appellees] contend that the 2011 Settlement Agreement and Release (hereinafter the "Agreement") releases [the E]state from certain claims made by [Appellant] in his objections to the first and second accounts. [Appellees] maintain the Dead Man's Act bars [Appellant] from testifying that he signed the Agreement based on [the] decedent's alleged representation that he would not change his will. In opposition, [Appellant] asserts that the Agreement was procured by fraud and duress and suggests that the court should disregard it. [Appellant] asserts that he was fraudulently induced into entering into the Agreement based on [the] decedent's misrepresentation that he had not changed his will.[FN1]

> [FN1] At the time [Appellant] entered into the 2011 Settlement Agreement on April 2, 2011, [the] decedent allegedly assured him that he had not changed his will. The record shows [the] decedent made a new will on March 15, 2011 ("probated will"). The probated will contains no provision granting "a priority distribution of $1.5 million to [Appellant]." [Appellant] claims that [the decedent's] promise that his will contained this distribution was a consideration that led him to enter into the Agreement.

The parol evidence rule bars admission into evidence any prior or contemporaneous oral representations or agreements that are

- 12 -

specifically covered by the written contract that is adopted as the final and complete expression of the agreement. *See Youndt v. First Nat. Bank of Port Allegany*, 868 A.2d 539, 546 (Pa. Super. 2005) ("Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.") (internal citations and quotation marks omitted); *see also Blumenstock v. Gibson*, 811 A.2d 1029, 103[5] (Pa. Super. 2002) ("[A]lleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract."). Furthermore, "[i]n order to protect those against whom generalized and unsupported fraud may be levied, the Pennsylvania Rules of Civil Procedure require that fraud be averred with particularity." *Presbyterian Med. Cen. v. Budd*, 832 A.2d 1066, 1072 (Pa. Super. 2003) (quotation marks omitted). *See also* Pa.R.C.P. 1019(b). The specific elements of fraud are as follows:

(1)   a representation;

(2)   which is material to the transaction at hand;

(3)   made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4)   with the intent of misleading another into relying on it;

(5)   justifiable reliance on the misrepresentation; and

(6)   the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). "Fraudulent misrepresentations may be proved to modify or avoid a written contract if it is averred and proved that they were omitted from the (complete) written contract by fraud, accident or mistake." *Bardwell v. Willis Co.*, 100 A.2d 102, 104 (Pa. 1953) (citations omitted). Reliance on the misrepresentation is not justifiable if the contract omits the allegedly material term.[FN2] Thus, a claim of fraud in the inducement will not defeat the parol evidence bar if the complaining party signs a contract that does not include the allegedly fraudulent term.[FN3]

[FN2] "A party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations." *McGuire v. Schneider, Inc.*, 534 A.2d 115, 119 (Pa. Super. 1987) ([citing] *LeDonne v. Kessler*, 389 A.2d 1123, 1130 n.10. (Pa. Super. 1978)).

[FN3] "If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract . . . , they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify." *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Properties, Inc.*, 653 A.2d 663, 669 (Pa. Super. 1995) (quoting *McGuire*, 534 A.2d at 119-20 (quoting *Bardwell*, 100 A.2d at 105)).

On April 2, 2011, [Appellant] entered into the Agreement with [the] decedent, agreeing "to resolve any and all disputes" between them, "from the beginning of the world to the date hereof . . . in the interest of fully and finally eliminating all possible claims between or concerning them, including any and all claims against or in connection with [decedent's] future estate." The Agreement was entered into between [the] decedent and [Appellant], his agents, successors, representatives or assigns, and AMA Contracting, Inc., as well as their agents, successors, representatives or assigns. Under the terms of the Agreement, [the] decedent agreed to pay [Appellant] $100,000 for his general partnership and limited partnership interest, and any other interest (if any) owned by [Appellant] in or concerning the property located at 2131 Walnut Street in Philadelphia Pennsylvania owned by 2131 Associates LP, and 2131 Management Company LLC. In addition, [the] decedent agreed to pay AMA $600,000 and the taxes associated with each of these two payments. The Agreement contained a covenant to forego claims between [the] decedent and [Appellant], and/or AMA, as well as with respect to any intercompany liabilities as between 2131 Associates, TSAG Associates, Inc., and AMA, as well as any unpaid liabilities owed to [the] decedent on the balance sheet of AMA. Moreover, [the] decedent and [Appellant] and AMA agreed to a mutual release of their affiliates which included specifically a release of:

all claims arising from, or which may or could arise from, (i) any and all services and considerations of any kind rendered

- 14 -

by [Appellant] or AMA to [the decedent] or to any entity in which [the decedent] has or has ever had any ownership interest, (ii) any and all debts concerning any and all possible business, partnership, property, compensation, or real estate matters, contracts, promises, expectations, interests or obligations, (iii) all matters and debts, past and future, referenced in, arising out of any activity or matter concerning, or in any way otherwise alluded to on, the schedule submitted by [Appellant] and attached hereto and incorporated herein by reference as Exhibit "B", (iv) any and all debts owed by [Appellant] or [the decedent] to one another, by [the decedent] to AMA, or by AMA to [the decedent], (v) any and all debts owed by or to [Appellant], [the decedent] or AMA to or from any entity in which [the decedent] or [Appellant] have any ownership interest, (vi) any and all other claims or allegations of any kind as between [Appellant], [the decedent,] or AMA including, without limitation, any and all claims or counterclaims that could have been asserted through the date of this Settlement Agreement and Release for breach of contract, breach of partnership obligations, loan repayment, fraud, misrepresentation, promissory estoppel, misappropriation, conversion, breach of fiduciary duty, unjust enrichment, quantum merit, duty of loyalty, and further including any and all provisions, regulations, interpretations and notices relating to any and all violations of any and all federal, state, local and or municipality wage and hour statutes, regulations, provisions or laws, or violations of any and all other laws, rules, regulations, provisions or ordinances, pertaining to creditors rights, uniform partnership act obligations, real estate claims, debt repayment, employment, discrimination, wages, hours, or any other terms and conditions of employment or termination of employment, and (vii) any and all other claims, counterclaims, and/or third-party claims, which have been, or which could have been, alleged or brought through the Effective Date hereof by [the decedent], [Appellant,] or AMA against any other party hereto in any court, arbitration forum, or any and all other tribunals or forums of any kind or nature.

[As mentioned above, Exhibit B was] attached to the Agreement contained a spreadsheet prepared by [Appellant] summarizing

various outstanding debts relating to TSAG, 1333 Associates, the 2131 Entities, Grant Avenue, and the Trust.

The court has already granted [Appellees'] motion in *limine* to preclude [Appellant] from testifying as to any matters occurring prior to the death of the decedent "except as may otherwise be permitted by law, as will be determined by this court as necessary in the further course of these proceedings." Orphans' Ct. Order dated 10/13/2021. Any claim that [Appellant] was forced to enter into the Agreement based on fraud or duress because of a statement allegedly made by the decedent is precluded in accordance with this Court's October 13, 2021 order as the court has determined [Appellant] is not a competent witness under the Dead Man's Act to testify as to any matter before [the] decedent's death. ***See*** [***id.***]; ***see also*** 42 Pa.C.S. § 5930. Moreover, the court finds that the Agreement is an enforceable, integrated writing that operates as a release of [the Estate] from liabilities to [Appellant] and/or AMA concerning TSAG, AMA Consulting, 2131 LLC, 2131 L.P., and TSAG Associates. The Agreement was integrated. The Agreement contains no mention of any promise that [the] decedent's will should contain "a priority distribution of $1.5 Million to [Appellant]" and such a statement is the type of testimony barred by the Dead Man's Act. [Appellant] failed to protect himself by incorporating that term into the written Agreement. Moreover, [Appellant] failed to plead fraud and duress with the requisite particularity required by the Rules of Civil Procedure in his objections by raising it as an affirmative defense in new matter. ***See*** [Pa.R.C.P. 1030] . . . .

Orphans' Ct. Mem. and Order, 11/9/21, at 3-8 (some citations omitted and formatting altered). The orphans' court then concluded that Appellant's claims against the enforcement of the Agreement were meritless. ***Id.*** at 8.

Following our review of the record, we agree with the orphans' court's conclusions. For the reasons thoroughly discussed by the orphans' court, there is no merit to Appellant's claims concerning the scope, validity, or

application of the Agreement.[10]  On the basis of the orphans' court's memorandum and order, we conclude that Appellant's claim is meritless.  **_See id._** at 3-8; **_see also_** Orphans' Ct. Op., 2/15/22, at 5-11.

## Ownership of TSAG

In his fourth issue, Appellant states that the orphans' court erred when it concluded that the decedent owned 100% of the business entity known as

---

[10] To the extent that Appellant claims that the orphans' court erred when it concluded that Appellant failed to raise fraud and duress as an affirmative defense pursuant to Pa.R.C.P. 1030, **_see_** Appellant's Brief at 37-39, we conclude that no relief is due.  Although Appellant is correct that he was not obligated to raise fraud and duress as affirmative defenses in "new matter" in response to the first and second accountings, Appellees note that this misstatement by the orphans' court is of no moment.  Appellees' Brief at 35. Appellees contend that while Appellant was not obligated to raise affirmative defenses in "new matter," he was nevertheless required to plead fraud and duress with "particularity."  **_Id._** (quoting Pa.O.C.R. 3.3(c)).  Rule 3.3(c) specifies that "[a]verments of fraud or mistake shall be averred with particularity."  Moreover, Appellees state that because Appellant never brought any claim or action seeking to invalidate the Agreement, and because Appellant failed to plead any claim concerning fraud or duress, he fell short of the particularity required by the rule.  **_Id._**  Appellees continue: "Since [Appellant] never properly challenged the validity of the Settlement Agreement, there can be no error in the [o]rphans' [c]ourt recognizing and applying it as an 'enforceable, integrated writing that operates as a release of the TSAG, 2131, AMA, and Trust Objections.'"  **_Id._** (quoting Orphans' Ct. Mem. and Order, 11/9/21, at 7).  We agree with Appellees, and we conclude that the orphans' court's misstatement concerning Rule 1030 and "new matter," does not alter our disposition, and Appellant's argument to the contrary is unavailing.  In any event, we reiterate that Appellant's underlying issue is meritless because, as the orphans' court correctly concluded, Appellant cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations.  **_See_** Orphans' Ct. Mem. and Order, 11/9/21, at 5, nn.2-3.

TSAG, and Appellant claims that he owns 46.7%. Appellant's Brief at 51.[11] Appellant argues that the orphans' court erred when it concluded that as of January 29, 2007, Appellant no longer had any ownership interest in TSAG, and he contends that there are genuine issues of material fact on this issue. *Id.* at 51-52.

Appellees respond that this claim is meritless. Appellees contend that the Agreement released and foreclosed any claims Appellant had against the decedent and ultimately the Estate. Appellees' Brief at 28. Appellees argue that the Agreement expressly covers any and all claims concerning TSAG, including a purported ownership interest. *Id.*

Following our review of the record, we discern no merit to Appellant's claim. As stated previously, we agree with the orphans' court that the parol evidence rule and Dead Man's Act precluded Appellant from challenging the validity of the Agreement. Likewise, we agree with the orphans' court that the Agreement unequivocally established that Appellant had no ownership in TSAG. *See* Orphans' Ct. Mem. and Order, 11/9/21, at 4-7, 10-11.

Further, we note that in addition to the Agreement, the record also contains a letter from decedent to Appellant dated January 1, 2007, informing Appellant that he was in default under the promissory note and no longer an owner of TSAG. Appellees' Mot. for Partial Sum. J., 8/2/21, at Ex. 22.

---

[11] In his argument on this issue, Appellant does not mention any business entity other than TSAG. *See* Appellant's Brief at 51-53.

Additionally, to the extent that Appellant continued to claim an ownership interest in TSAG after January 1, 2007, the record reflects that on January 1, 2011, the decedent expressly cancelled Appellant's TSAG shares due to Appellant's default on the promissory note, and the record contains the cancelled promissory note and stock certificate reflecting that Appellant's ownership interest in TSAG was terminated as of January 1, 2011. *See id.* at Ex. 23. Finally, the record contains a writing drafted on behalf of Appellant and Appellees as executors of the Estate that was created in an effort to obtain the TSAG corporate minute book, and this writing is dated June 13, 2012. *See id.* at Ex. 24. In the June 13, 2012 writing, Appellant concedes that the decedent was the sole owner of TSAG, and Appellant signed this document. *See id.*

For these reasons, we agree with the orphans' court that the record unequivocally established that Appellant had no ownership in TSAG. We discern no issue of material fact, and we conclude that Appellant is due no relief.

## Reimbursement of AMA

In his fifth issue, Appellant identifies a claim that the orphans' court erred when it dismissed Appellant's objections concerning the Estate's reimbursement to AMA Contracting, Inc. *See* Appellant's Brief at 6, 41. However, as we noted previously, Appellant failed to provide argument that corresponds directly with the issues he purports to raise on appeal. *See id.* at 5-6; 33-54. Although Appellant mentions reimbursement as part of his

broad argument related to the application of the Dead Man's Act, it is difficult to determine where Appellant provides argument or support for this specific claim. **See id.** at 40-41.

We have already concluded that the orphans' court committed no error in its application of the Dead Man's Act, and we conclude that Appellant is entitled to no relief in that respect. Additionally, because Appellant provides no further relevant argument on this specific claim, we conclude that the issue is waived. **See Koller Concrete, Inc.**, 115 A.3d at 321 (noting that this Court will not address an issue "where no corresponding analysis is included in the [appellate] brief" (citation omitted)); **see also George v. Ellis**, 911 A.2d 121, 131 (Pa. Super. 2006) (explaining that an issue is waived where the appellant fails to develop an argument and cite to any relevant authority in support of that claim). In any event, were we to reach this issue, we would conclude that Appellant is not entitled to relief, and we would affirm on the basis of the orphans' court memorandum and order. **See** Orphans' Ct. Mem. and Order, 11/9/21, at 9.

### Limited Joinder

In his final issue on appeal, Appellant claims that the orphans' court erred in dismissing his objections to the first and final accounting concerning the Trust because Appellant joined that accounting as co-trustee. Appellant's Brief at 53. Appellant asserts that joinder was limited, and it contained a reservation of rights regarding claims for reimbursement for insurance premium payments Appellant made with respect to the decedent's life

- 20 -

insurance policy which funded the Trust. *Id.* at 53-54. Appellant also asserts that he is entitled to reimbursement for his payment of the legal fees related to the administration of the Trust and litigation involving the Trust. *See id.*

In its February 15, 2022 Rule 1925(a) opinion, the orphans' court agreed that Appellant's joinder was limited, and that Appellant reserved his rights regarding his claim for reimbursement of decedent's life insurance premiums and the legal fees related to the administration of the Trust and the instant litigation. *See* Orphans' Ct. Op., 2/15/22, at 10-11. The orphans' court concluded that it erred in finding that Appellant could not object to an accounting that he had joined because, although Appellant joined the accounting, he did so with a specific reservation of rights and limited his joinder. *See id.* Therefore, the orphans' court agreed with Appellant that remand was necessary with respect to these specific claims for reimbursement. *Id.* at 11.

After review, we agree with the orphans' court's conclusion. Appellant's joinder was limited and contained a reservation of rights. *See* Appellant's Joinder of Accounting, 4/27/17. Additionally, although Appellant's claims may be precluded by the Agreement as Appellees contend, we agree with the orphans' court that it was error to grant summary judgment based solely on the joinder because Appellant's joinder specifically contained a reservation of rights regarding Appellant's claim for reimbursement for his payment decedent's life insurance premiums and the legal fees related to the administration of the Trust and litigation of this matter. In other words, the

- 21 -

orphans' court erred in concluding that the Appellant's claim for reimbursement was barred based on joinder.[12]

For the reasons, we affirm the November 9, 2021 order granting partial summary judgment in favor of Appellees except with respect to Appellant's claims for reimbursement for his payment decedent's life insurance premiums and legal fees as reserved in his limited joinder. **See** Appellant's Joinder of Accounting, 4/27/17. On Appellant's claim for reimbursement, we reverse and remand to the orphans' court for further proceedings consistent with this memorandum.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2022

---

[12] Although not included in the argument section of Appellees' brief, Appellees remark that even if Appellant's joinder was limited, remand is unnecessary because Appellant's claim is ultimately barred by the Agreement. **See** Appellees' Brief at 17 n.8. However, that conclusion was never made by the orphans' court, and this Court will not make that determination in the first instance. Appellant's claim for reimbursement in this regard is left to the orphans' court on remand.